| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, <br> Plaintiff <br> v. <br> GENERAL SERVICES ADMINISTRATION, <br> Defendant | Civil Action No. 18-2071 (CKK) |

**MEMORANDUM OPINION**
(July 29, 2019)

This lawsuit arises from a Freedom of Information Act ("FOIA") request that Plaintiff Citizens for Responsibility and Ethics in Washington made to Defendant General Services Administration ("GSA"). Plaintiff requested all communications from January 20, 2017 to July 30, 2018 between GSA and the White House concerning the renovation of the Federal Bureau of Investigation ("FBI") headquarters. Following Defendant's initial search, Defendant notified Plaintiff that no documents were found. However, Defendant later conducted another search using terms and parameters suggested by Plaintiff. Ultimately, Defendant located 52 pages of responsive records, 25 pages of which were released with certain redactions. The parties have filed cross-motions for summary judgment on the issues of whether or not Defendant's search, withholding of documents, and redactions violated FIOA.

Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as it currently stands, the Court GRANTS IN PART and DENIES WITHOUT PREJUDICE IN PART

---

[1] The Court's consideration has focused on the following documents:
- Def.'s Mot. for Judgment on the Pleadings, to Dismiss and for Summary Judgment, ECF No. [18] ("Def.'s Mot.");

1

Plaintiff's Cross-Motion for Summary Judgment and DENIES WITHOUT PREJUDICE Defendant's Motion for Summary Judgment. The Court concludes that Defendant's search conducted in response to Plaintiff's FOIA request was inadequate. As such, the Court GRANTS IN PART Plaintiff's Motion. In an effort to avoid piecemeal litigation, the Court otherwise DENIES WITHOUT PREJUDICE Plaintiff's and Defendant's motions so that Defendant can conduct an adequate search and identify, disclose, redact, or withhold any additional records prior to the Court's resolution of the remaining issues.

## I. BACKGROUND

In its July 30, 2018 FOIA request, Plaintiff sought to acquire "all communications from January 20, 2017 to [July 30, 2018] between GSA and the White House concerning the renovation of the FBI headquarters." Pl.'s Statement of Undisputed Material Facts ("Pl.'s Statement"), ECF No. 19-9, ¶¶ 1-2; Def.'s Res. to Pl.'s Statement of Undisputed Material Facts ("Def.'s Res."), ECF No. 22, ¶¶ 1-2. Following Plaintiff's request, on August 27, 2018, the GSA's Office of the Inspector General released a "Review of GSA's Revised Plan for the Federal Bureau of Investigation Headquarters Consolidation Project" which described meetings between GSA and the White House as well as specific emails concerning those meetings. *Id.* at ¶¶ 3-5; *Id.* at ¶¶ 3-5.

---

- Mem. in Support of Pl.'s Cross-Mot. for Summary Judgment and Opp'n to Def.'s Mot. for Judgment on the Pleadings, to Dismiss and for Summary Judgment, ECF No. [19-1] ("Pl.'s Mot.");
- Reply in Support of Def.'s Mot. on the Pleadings, to Dismiss and for Summary Judgment and Opp'n to Pl.'s Cross-Mot. for Summary Judgment, ECF No. [22] ("Def.'s Reply"); and
- Reply in Support of Pl.'s Cross-Mot. for Summary Judgment, ECF No. [24] ("Pl.'s Reply").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

After Defendant failed to respond to Plaintiff's request within the statutory deadline, Plaintiff filed this lawsuit on September 4, 2018. A little over a month later, on October 18, 2018, the United States House Committee on Oversight and Reform ("House Oversight Committee") publicly released at least three emails concerning the renovation of the FBI headquarters. *Id.* at ¶ 7; *Id.* at ¶ 7. First, a January 25, 2018 email exchange between a White House Official and a GSA official concerned the "path forward for the new FBI Headquarters announcement" which the "President" had "signed off on." *Id.* at ¶ 8a; *Id.* at ¶ 8a. Second, a January 28, 2018 email between GSA officials asked that the "DOJ/FBI" "memoraliz[e] what was decided in the meeting with POTUS" regarding the FBI headquarters. GSA requested that the memorialized document "recap the oval meeting with what POTUS directed everyone to do" and "then ask Emily [Murphy with GSA] to execute POTUS's orders." *Id.* at ¶ 8b; *Id.* at ¶ 8b. Finally, the House Oversight Committee released a January 28, 2018 email exchange in which GSA officials forwarded an email from the Office of Management and Budget ("OMB") explaining that the FBI headquarters project is "a demolition/new construction [project] per the President's instructions." *Id.* at ¶ 8c; *Id.* at ¶ 8c.

Later, on the same day that the House Oversight Committee released these emails, the parties conducted a teleconference during which Defendant explained that its search had uncovered no records responsive to Plaintiff's FOIA request. *Id.* at ¶ 9; *Id.* at ¶ 9. Plaintiff responded by alleging that the emails released by the House Oversight Committee appeared to be responsive to its FOIA request, thus casting doubt on the adequacy of Defendant's search. *Id.* at ¶ 10; *Id.* at ¶ 10.

On October 25, 2018, Defendant agreed to conduct another search using terms and parameters suggested by Plaintiff based on the language from the publicly released emails. *Id.* at ¶ 11; *Id.* at ¶ 11. Plaintiff provided Defendant with the following search proposal:

- **Date range**: January 20,2017 to July 30,2018
- **Custodians**: emails between any GSA email address and any White House/EOP email address
- **Search terms**:
    - headquarters
    - HQ
    - demoli!
    - renov!
    - rebuild
    - demo! W/3 rebuild [**explanation**: looking for all variations of demo! within three words of rebuild]
    - "demolish rebuild"
    - remodel!
    - "construction project"
    - "new construction"
    - President W/10 order! OR direct! OR instruct! OR decide! OR want! [**explanation**: looking for all variations of these words within 10 words of President]
    - POTUS W/10 order! OR direct! OR instruct! OR decide! OR want! [**explanation**: looking for all variations of these words within 10 words of POTUS]
    - operating lease
    - leaseback
    - PA Ave!

Ex. 2, ECF No. 18-2, 1-2.

On December 7, 2018, Defendant informed Plaintiff that it had completed the additional search and determined that all responsive documents were exempt from disclosure under FOIA. Pl.'s Statement, ECF No. 19-9, ¶ 12; Def.'s Res., ECF No. 22, ¶ 12. Plaintiff responded by asking Defendant for more specific information on the number of withheld pages and on the grounds for the withholdings. *Id.* at ¶ 13; *Id.* at ¶ 13. Defendant stated that 52 pages of responsive records had been located. Of the 52 pages, 25 pages were being withheld pursuant to FOIA Exemption 5 under the presidential communications privilege and the deliberative process

privilege and FOIA Exemption 7(c) based on the potential for the information to constitute an unwarranted invasion of personal privacy. The remaining 27 responsive pages were withheld pursuant to only FOIA Exemption 5 under the deliberative process privilege. *Id.* at ¶¶ 14-15; *Id.* at ¶¶ 14-15.

Approximately three months later, on March 15, 2019, Defendant decided to release with certain redactions the 25 pages that had originally been withheld under the presidential communications privilege. *Id.* at ¶ 16; *Id.* at ¶ 16. Neither Defendant's pleadings, Declaration, or *Vaughn* index provide any indication that the emails which were publicly released by the House Oversight Committee were included in the 52 pages of documents which were located.

On March 28, 2019, Defendant moved for summary judgment, asking the Court to conclude that it did not violate FOIA in responding to Plaintiff's request. And on April 29, 2019, Plaintiff cross-moved for summary judgment, asking the Court to conclude that Defendant violated FOIA based on its search, its withholdings, and its redactions. These motions are currently before the Court.[2]

## II. LEGAL STANDARD

Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted). Congress remained sensitive to the need to achieve balance between these objectives and the potential that "legitimate governmental and private interests could be harmed

---

[2] Defendant contends that Plaintiff violated Local Civil Rule 7(h) by failing to properly controvert or dispute Defendant's Statement of Facts. Def.'s Reply, ECF No. 22, 3. While Plaintiff's Response to Defendant's Statement of Facts is not an archetype of good pleading, the Court concludes that it should exercise its discretion to consider Plaintiff's Response. *See Gardels v. Cent. Intelligence Agency*, 637 F.2d 770, 773 (D.C. Cir. 1980) (explaining that courts have discretion to consider pleadings that do not comply with the local rules).

by release of certain types of information." *FBI v. Abramson*, 456 U.S. 615, 621 (1982). To that end, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions." *Milner v. Dep't of Navy*, 562 U.S. 562, 562 (2011). Ultimately, "disclosure, not secrecy, is the dominant objective of the Act." *Rose*, 425 U.S. at 361. For this reason, the "exemptions are explicitly made exclusive, and must be narrowly construed." *Milner*, 562 U.S. at 565 (citations omitted).

When presented with a motion for summary judgment in this context, the district court must conduct a "de novo" review of the record, which requires the court to "ascertain whether the agency has sustained its burden of demonstrating the documents requested are ... exempt from disclosure under the FOIA." *Multi Ag Media LLC v. U.S. Dep't of Agriculture*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (citation omitted). The burden is on the agency to justify its response to the plaintiff's request. 5 U.S.C. § 552(a)(4)(B). "An agency may sustain its burden by means of affidavits, but only if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Multi Ag Media*, 515 F.3d at 1227 (citation omitted). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. Civil Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011) (citations omitted). "Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011). Summary judgment is proper when the pleadings, the discovery

materials on file, and any affidavits or declarations "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### III. DISCUSSION

Plaintiff begins by challenging the adequacy of Defendant's search conducted in response to Plaintiff's FOIA request. Plaintiff faults Defendant for failing to locate the emails which had been publicly released by the House Oversight Committee, despite the fact that Plaintiff flagged those emails for Defendant prior to Defendant's supplemental search. Plaintiff contends that this failure casts doubt on the adequacy of Defendant's search. The Court agrees.

An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was "reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (internal quotation marks omitted). "At summary judgment, a court may rely on [a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Ancient Coin Collectors Guild*, 641 F.3d at 514 (internal quotation marks omitted). "The agency cannot limit its search to only one or more places if there are additional sources that are likely to turn up the information requested." *Valencia-Lucena*, 180 F.3d at 326 (internal quotation marks omitted). Ultimately, the adequacy of a search is "determined not by the fruits of the search, but by the appropriateness of [its] methods." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citation omitted); *see also Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) ("[T]he issue to be resolved is not whether there might exist any other documents possibly

7

responsive to the request, but rather whether the *search* for those documents was *adequate*." (emphasis in the original)).

Defendant has two arguments as to why its search was reasonable under the circumstances. First, Defendant contends that Plaintiff narrowed its FOIA request when it proposed specific search terms and parameters. Second, as to the existence of the emails released by the House Oversight Committee, Defendant contends that the "mere fact that additional documents have been discovered" does not mean that its search was inadequate. B*arouch v. U.S. Dep't of Justice*, 962 F. Supp. 2d 30, 53 (D.D.C. 2013). The Court will address each argument in turn.

First, the Court concludes that Plaintiff's proposal of specific search terms and parameters did not narrow the underlying request. Defendant argues that the GSA emails released by the House Oversight Committee are not responsive to Plaintiff's FOIA request because Plaintiff narrowed its request by suggesting specific search terms and parameters. Defendant cites three cases in support of its argument; however, none are persuasive to the Court.

First, in *American Center for Law and Justice v. United States Department of Justice*, 325 F. Supp. 3d 162 (D.D.C. 2018), the court explained that "where sophisticated parties to a FOIA case have agreed to narrow the issues in a written status report, they generally may be held to their agreement under traditional waiver principles." 325 F. Supp. at 168-69. Here, the parties never agreed to narrow the issues in a written status report filed with the Court. Instead, following the failure of Defendant's initial search, Plaintiff merely sent an email suggesting search terms and parameters to Defendant based on the emails which had been released by the House Oversight Committee.

Second, in *Gilman v. Department of Homeland Security*, 32 F. Supp. 3d 1 (D.D.C. 2014), the court held that the plaintiff had narrowed her FOIA request based on the parties' joint status report explaining how the defendant could satisfy the FOIA request. 32 F. Supp. 3d at 22-23. Additionally, the Court had entered an Order effectuating the narrowing agreement. *Id.* Again, here, the parties never filed a joint status report narrowing Plaintiff's FOIA request and the Court never entered an Order effectuating such a narrowing.

Third, in *People for the American Way Foundation v. United States Department of Justice*, 451 F. Supp. 2d 6 (D.D.C. 2006), the court found that the plaintiff's FOIA request had been narrowed because the defendant "was a signatory to several Joint Status Reports during the course of this litigation, in which the parties represented-unequivocally-that the FOIA request had been narrowed." 451 F. Supp. 2d at 11-12. The court further stressed that the plaintiff is the "master" of its FOIA request. *Id.* Here, there were no joint status reports evidencing an agreement to narrow Plaintiff's FOIA request. Moreover, as the "master" of the request, Plaintiff insists that the request was never narrowed.

Accordingly, the Court finds that Plaintiff's mere proposal of search terms and parameters was insufficient to narrow the scope of Plaintiff's formally-made FOIA request. However, even if the Court were to conclude that Plaintiff's FOIA request was implicitly narrowed by its search proposal, Defendant has still failed to explain why its narrowed search did not discover at least two of the emails which the House Oversight Committee had released.

Defendant argues that the only email released by the House Oversight Committee that would have potentially been found under Plaintiff's search criteria is the January 25, 2018 email exchange between a White House official and a GSA official concerning the "path forward for the new FBI Headquarters announcement" which the "President" had "signed off on." Ex. 3,

9

ECF No. 19-4, 2. Defendant argues that this email was not found because the email at the top of the chain does not have any of the proffered terms and the term "headquarter" appears only further in the email chain. However, Defendant provides no explanation as to why the fact that the term "headquarter" appears "further in the email chain" would prevent the email from being found in an adequate search. Def.'s Reply, ECF No. 22, 5.

Defendant also attempts to explain why its search failed to locate the January 28, 2018 email exchange in which GSA officials forwarded an email from the OMB explaining that the FBI headquarters project is now "a demolition/new construction [project] per the President's instructions." Ex. 3, ECF No. 19-4, 5-6. Defendant explains that this email was sent using an OMB email address, with omb.eop.gov, not a White House email address, with who.eop.gov. Def.'s Reply, ECF No. 22, 5. But, Plaintiff's search parameters referenced any "White House/EOP email address." Ex. 2, ECF No. 18-2, 1. The use of a forward slash indicates that Plaintiffs intended to include any White House *or* EOP email address. *See* Dictionary.com, *How to Use the Slash*, available at https://www.dictionary.com/e/slash/ (explaining that a forward slash indicates alternatives). An adequate search for emails between any GSA email address and any White House *or* EOP email address would presumably have discovered the January 28, 2018 email as the email included the terms "demolition" and "new construction." [3]

---

[3] The Court notes that the third email released by the House Oversight Committee and cited by Plaintiff does not appear to be responsive to Plaintiff's initial FOIA request or to its proposed search parameters. The January 28, 2018 email between GSA officials asked that the "DOJ/FBI" "memoraliz[e] what was decided in the meeting with POTUS" regarding the FBI headquarters. GSA requested that the document "recap the oval meeting with what POTUS directed everyone to do" and "then ask Emily [Murphy with GSA] to execute POTUS's orders." Ex. 3, ECF No. 19-4, 3-4. This email appears to have been sent between GSA email addresses. And, Plaintiff's FOIA request mentioned only "copies of all communications … between GSA and the White House." Ex. 1, ECF No. 18-1, 2. As this communication was not between GSA and the White House, it does not appear to be responsive to Plaintiff's request.

Accordingly, the Court concludes that Plaintiff has presented evidence that Defendant failed to find at least two emails which were responsive to Plaintiff's FOIA request, both as originally construed and as allegedly narrowed. These emails were publicly released and presented to Defendant by Plaintiff prior to Defendant's supplemental search. Despite Defendant's knowledge of these emails, Defendant failed to conduct a search sufficient to find these emails or to follow leads which would have led to these emails.

However, Defendant argues that the proven existence of undiscovered emails responsive to Plaintiff's FOIA request is insufficient to "impugn the accuracy of the [agency] affidavits" stating that the search was adequate. *Barouch*, 962 F. Supp. 2d at 53. Defendant submitted a Declaration from Travis Lewis, the Director of GSA's FOIA & Records Management Division. In his Declaration, Mr. Lewis stated that he tasked GSA's Office of the Chief Information Officer ("OCIO") with conducting a search for responsive records using Plaintiff's proposed search terms and parameters. Decl. of Travis Lewis, ECF No. 18-3, ¶ 6. Mr. Lewis further stated that the OCIO "searches all agency employees' emails, calendar togs and shared drive files for responsive electronic records via the search parameters requested by the FOIA requester." *Id.* Additionally, Mr. Lewis ensured that there were no paper records responsive to Plaintiff's request. *Id.* at ¶ 10. Defendant contends that the Court should rely on Mr. Lewis's affidavit concerning the search for records as evidence of the adequacy of the search.

The Court begins by noting that this is not a case where Defendant "uncovered additional documents *after* its initial search." *Barouch*, 962 F. Supp. 2d at 53 (emphasis added). Here, Plaintiff presented Defendant with documents responsive to its FOIA request *prior* to Defendant's supplemental search. Despite knowing of the existence of these responsive records, Defendant's search did not locate the responsive records. And, Mr. Lewis's Declaration provides

no explanation as to why these records were not located by the search. The fact that Defendant's search failed to yield responsive records, which Defendant knew existed prior to conducting its search, casts substantial doubt on the adequacy of Defendant's search. Such a failure leads the Court to conclude that Defendant's search was not reasonably calculated to discover all documents responsive to Plaintiff's request. *See Valencia-Lucana*, 180 F.3d at 326-27 (reversing grant of summary judgment for the defendant agency where "the record itself reveals positive indications of overlooked materials" (internal quotation marks omitted)); *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998) (explaining that an agency must revise its assessment of what constitutes a reasonable search "to account for leads that emerge during its inquiry"); *Friends of Blackwater v. U.S. Dep't of Interior*, 391 F. Supp. 2d 115, 120-21 (D.D.C. 2005) (finding the agency's search inadequate "in light of evidence that responsive documents originated in and are likely to be contained in the files" of the defendant agency but the defendant's search did not discover those documents); *Boyd v. U.S. Marshals Serv.*, No. 99-2712, 2002 U.S. Dist. LEXIS 27734, *3-4 (D.D.C. Mar. 15, 2002) (finding the defendant agency's search inadequate partly because the defendant failed to explain why its search did not locate a record known to be responsive to the plaintiff's FOIA request).

## IV. CONCLUSION

Because the Court concludes that Defendant's search was inadequate, the Court GRANTS IN PART Plaintiff's Cross-Motion for Summary Judgment. The Court otherwise DENIES WITHOUT PREJUDICE Plaintiffs' Motion and Defendant's Motion.

At this time, the Court will not address the remaining issues pertaining to withholdings and redactions. Instead, the Court ORDERS that Defendant conduct an adequate search. The parties are ORDERED meet and confer to discuss Defendant's additional search. Defendant is

ORDERED to complete its new search by no later than SEPTEMBER 5, 2019. If it is not possible to complete the search by that date, Defendant should file a Status Report prior to SEPTEMBER 5, 2019, informing the Court as to why the deadline cannot be met and proposing a new deadline. Following Defendant's new search, if necessary, the parties can file renewed motions for summary judgment addressing all disputed withholdings and redactions in order to avoid piecemeal litigation. An appropriate Order accompanies this Memorandum Opinion.

/s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge