**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, Plaintiff v. GENERAL SERVICES ADMINISTRATION, Defendant | Civil Action No. 18-2071 (CKK) |

**MEMORANDUM OPINION**
(March 29, 2021)

This lawsuit arises from a Freedom of Information Act ("FOIA") request made by Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") to Defendant General Services Administration ("GSA"). CREW requested communications from January 20, 2017 to July 30, 2018 between GSA and the White House concerning the renovation of the Federal Bureau of Investigation ("FBI") headquarters in Washington, D.C.

Currently before the Court are Defendant GSA's [45] Motion for Summary Judgment and Plaintiff CREW's [46] Cross-Motion for Summary Judgment. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as whole, for the reasons stated below, the Court finds that GSA has satisfied its burden to demonstrate that it properly withheld records in

---

[1] The Court's consideration has focused on the following documents:

- Defendant's Renewed Motion for Summary Judgment ("GSA's Mot."), ECF No. 45;
- Plaintiff's Third Cross-Motion for Summary Judgment and Opposition to Defendant's Renewed Motion for Summary Judgment ("CREW's Mot. & Opp'n"), ECF No. 46;
- Defendant's Reply in Support of its Renewed Motion for Summary Judgment and Opposition to Plaintiff's Third Motion for Summary Judgment ("GSA's Reply & Opp'n"), ECF No. 49; and
- Reply in Support of Plaintiff's Third Cross-Motion for Summary Judgment ("CREW's Reply"), ECF No. 50.

1

Categories 2, 3, and 4 pursuant to FOIA Exemption 5, and so shall GRANT-IN-PART GSA's Motion for Summary Judgment as to the those three categories.  The Court further finds that GSA has not demonstrated that the document in Category 1 properly falls within FOIA Exemption 5, and so shall GRANT-IN-PART CREW's Cross-Motion for Summary Judgment as to that category.  Finally, the Court concludes that GSA has failed to meet its burden to demonstrate that all reasonably segregable information in Category 6 has been disclosed to CREW, and so shall HOLD IN ABEYANCE the parties' cross-motions with respect to that category before ordering the release of certain documents, to allow GSA to re-examine those documents to determine whether they should be released.

## I.   BACKGROUND

In 2012, GSA announced its plan to find a new facility to serve as the FBI's headquarters. CREW's Mot. & Opp'n Ex. 1 at 3, ECF No. 46-3.  GSA began reviewing potential locations and developers, and identified potential sites for a new building in Maryland and Virginia.  *Id.*  GSA continued reviewing developer proposals through early 2017.  *Id.* at 3–4.  In July 2017, GSA cancelled its efforts to secure a new headquarters facility, and instead directed its efforts to renovating the FBI's existing facility, the J. Edgar Hoover Building, located on Pennsylvania Avenue in Washington, D.C.  *Id.* at 4–5.  Citing public news reports, CREW suggests in its Complaint that this sudden change in course was attributable to President Donald J. Trump's interest in the FBI Headquarters Project.  Compl. ¶ 11, ECF No. 1.

On July 30, 2018, CREW submitted a FOIA request to GSA, seeking to acquire "copies of all communications from January 20, 2017 to [July 30, 2018] between GSA and the White House concerning the renovation of the FBI headquarters."  Def.'s Stmt. of Material Facts ("GSA's

Stmt.") ¶ 1, ECF No. 45-2;  Pl.'s Resp. to Def.'s Stmt. of Material Facts ("CREW's Resp. Stmt.")

¶ 1, ECF No. 46-2[2]; GSA's Mot. Ex. 1 (July 30, 2018 FOIA Request), ECF No. 45-3.

On August 27, 2018, GSA's Office of the Inspector General released a "Review of GSA's

Revised Plan for the Federal Bureau of Investigation Headquarters Consolidation Project" ("GSA

OIG Report"), which described meetings between GSA and the White House about the FBI

headquarters project, as well as specific emails concerning those meetings.  CREW's Stmt. of

Undisputed Material Facts ("CREW's Stmt.") ¶¶ 3–5, ECF No. 46-2; Def.'s Resp. to CREW's

Stmt. of Undisputed Material Facts ("GSA's Resp. Stmt.") ¶¶ 3–5, ECF No. 49-1.

CREW filed this lawsuit on September 4, 2018, after GSA failed to respond to CREW's

FOIA request within the statutory deadline.  CREW's Stmt. ¶ 6.  Then, on October 18, 2018, the

United States House Committee on Oversight and Reform ("House Oversight Committee")

publicly released at least three emails concerning the renovation of the FBI headquarters.  *Id.* ¶ 7.

First, a January 25, 2018 email exchange between a White House Official and a GSA official

concerned the "path forward for the new FBI Headquarters announcement" which the "President"

had "signed off on." *Id.* ¶ 8a. Second, a January 28, 2018 email between GSA officials requested

that the "DOJ/FBI" "memoraliz[e] what was decided in the meeting with POTUS" regarding the

FBI headquarters.  GSA requested that the memorialized document "recap the oval meeting with

what POTUS directed everyone to do" and "then ask Emily [Murphy with GSA] to execute

POTUS's orders." *Id.* ¶ 8b.  And third, the House Oversight Committee released a January 28,

2018 email exchange in which GSA officials forwarded an email from the Office of Management

---

[2] CREW included in the same document filed at ECF No. 46-2 its "Response to GSA's Statement of Material Facts as to Which There is No Genuine Issue" and "CREW's Statement of Undisputed Material Facts."  For the sake of clarity, the Court shall refer to the former  (beginning on page 1) as "CREW's Resp. to GSA's Stmt." and the latter (beginning on page 14) as "CREW's Stmt."

and Budget ("OMB") explaining that the FBI headquarters project is "a demolition/new construction [project] per the President's instructions." *Id.* ¶ 8c.

On the same day that the House Oversight Committee released these emails, the parties conducted a teleconference during which GSA explained that its search had uncovered no records responsive to CREW's FOIA request. *Id.* ¶ 9; GSA's Resp. Stmt. ¶ 9. CREW responded by alleging that the emails released by the House Oversight Committee appeared to be responsive to its FOIA request, casting doubt on the adequacy of GSA's search. CREW's Stmt. ¶ 10; GSA's Resp. Stmt. ¶ 10.

In October 2018, GSA agreed to conduct another search using terms and parameters suggested by CREW based on the language from the publicly released emails. CREW's Stmt. ¶ 11; GSA's Resp. Stmt. ¶ 11. CREW provided GSA with proposed search terms, which GSA implemented and stated that 52 pages of responsive records had been identified. GSA's Stmt. ¶¶ 12–14; CREW's Resp Stmt. ¶¶ 12–14. Of the 52 pages, GSA "initially withheld all of the responsive documents but later produced 25 pages," all except two pages of which contained redactions. GSA's Stmt. ¶ 10; CREW's Resp. Stmt. ¶ 10; *see* Declaration of Travis Lewis ("Lewis Decl.") ¶¶ 7–9, ECF No. 45-6. The remaining 27 pages of documents were withheld in full. Lewis Decl. ¶ 10. This search still did not uncover any of the emails released by the House Oversight Committee or related records. CREW's Stmt. ¶ 11; GSA's Resp. Stmt. ¶ 11.

After GSA's supplemental search and production, the parties cross-moved for summary judgment. CREW's Stmt. ¶ 12; GSA's Resp. Stmt. ¶ 12. On July 29, 2019, the Court granted partial summary judgment to CREW, concluding that GSA's second search was inadequate because GSA had failed to locate the emails which had been publicly released by the House Oversight Committee, despite the fact that CREW had "flagged those emails for [GSA] prior to

[GSA's] search." Mem. Op. at 2, 7, ECF No. 26. The Court ordered GSA to conduct an additional search by September 5, 2019 and deferred consideration of GSA's claimed exemptions pending GSA's completion of an additional search. *Id.* at 2.

GSA conducted an additional search, which yielded approximately 30,000 pages of potentially responsive documents. *See* GSA's Stmt. ¶ 11; Sept. 9, 2019 Joint Status Report, ECF No. 27. Thirteen pages were found to be responsive. GSA's Stmt. ¶ 12; CREW's Resp. Stmt. ¶ 12; Lewis Decl. ¶ 15. GSA partially redacted 12 of those pages, and released in full one page. GSA's Stmt. ¶ 12; CREW's Resp. Stmt. ¶ 12; Lewis Decl. ¶ 15.

The parties again cross-moved for summary judgment. CREW's Stmt. ¶ 14; GSA's Resp. Stmt. ¶ 14. Among other issues, CREW challenged the adequacy of GSA's additional search, contending that GSA failed to implement search terms agreed upon by the parties, and that GSA's supporting declaration contained "factual inaccuracies."[3] CREW's Stmt. ¶¶ 14; *see also* CREW's Renewed Cross-Mot. for S.J. at 7–13, ECF No. 38.

GSA then sought a stay of summary judgment briefing to "reexamine at the agency level the issues raised" in CREW's second cross-motion for summary judgment, by conducting a supplemental search to "resolve the parties' dispute" regarding the "disagreement between the parties over search terms and their application." *See* Def.'s Mot. to Stay S.J. Briefing at 1, ECF No. 41. The Court granted GSA's motion to stay and ordered GSA to conduct another supplemental search, process any additional records, identify any additional withholdings, and reexamine its current withholdings.[4] *See* Order at 1, ECF No. 43.

---

[3] GSA disputes that it "failed to implement" the proposed search terms or that its declaration contained factual inaccuracies. GSA's Resp. Stmt. ¶ 14.

[4] The parties later agreed to withdraw their second round of summary judgment briefing. *See* June 11, 2020 Minute Order.

In April 2020, GSA completed another search "to alleviate concerns by [CREW]" using "terms and parameters vetted, approved, and confirmed by Plaintiff's counsel." GSA's Stmt. ¶ 13; Lewis Decl. ¶ 16. This search yielded 97 pages of responsive material; GSA released 6 pages and withheld 91 pages pursuant to FOIA's Exemption 5. GSA's Stmt. ¶ 13; Lewis Decl. ¶ 17.

Presently before the Court are the parties' third cross-motions for summary judgment. CREW does not challenge the adequacy of GSA's search in the present motion; rather CREW challenges GSA's withholding of 118 pages in full pursuant to FOIA Exemption 5 and one page in part pursuant to FOIA Exemption 7(E). CREW's Stmt. ¶ 19. GSA prepared a *Vaughn* Index and filed in support of its motion a declaration by Travis Lewis. *See Vaughn* Index, ECF No. 45-7 ("*Vaughn* Index"); Lewis Decl., ECF No. 45-6.

Upon review of the parties' cross-motions for summary judgment, the Court exercised its discretion to grant-in-part CREW's request for *in camera* review of certain contested withholdings; specifically, the Court ordered GSA to submit for *in camera* review certain documents withheld pursuant to Exemption 5 and one document withheld pursuant to Exemption 7(E). *See* Mem. Op. at 4–7, ECF No. 53. GSA did so on March 5, 2021. *See* Notice, ECF No. 54. The Court also noted several inadequacies in GSA's *Vaughn* Index with respect to three categories of documents withheld pursuant to the deliberative process privilege under FOIA Exemption 5 (all of which the Court also ordered GSA to submit for *in camera* review). Mem. Op. at 7–9, ECF No. 53. The Court ordered GSA to provide a supplemental *Vaughn* Index for these categories to allow the Court to ascertain the "(1) the nature of the specific deliberative process involved, (2) the function and significance of the document in that process, and (3) the nature of the decisionmaking authority vested in the document's author and recipient." *Id.* at 9 (quoting *Pub. Emps. for Envtl. Responsibility v. EPA*, 213 F. Supp. 3d 1, 13 (D.D.C. 2016)); Order,

ECF No. 52.  GSA filed its supplemental *Vaughn* Index on March 25, 2021.  *See* Suppl. *Vaughn* Index, ECF No. 60-1 ("Suppl. *Vaughn* Index").

After the Court ordered GSA to submit certain documents for *in camera* review and to supplement its *Vaughn* Index, the parties filed a [55] Joint Status Report, indicating that they had resolved their dispute regarding one redacted page withheld pursuant to Exemption 7(E) and that GSA had released the redacted information to CREW.  *See* Joint Status Report, ECF No. 55.

Additionally, after the Court reviewed the records submitted by GSA, it concluded that the information contained in the document withheld by GSA as Category 5 ("White House briefing itinerary regarding a discussion of the future of the FBI headquarters on January 24, 2018," *see Vaughn* Index at 8) is publicly available in the GSA OIG Report.[5]  Accordingly, the Court ordered GSA to provide its reasoning for withholding this document in light of the public availability of information contained therein.  *See* Mar. 24, 2021 Minute Order.  The parties subsequently filed a [58] Joint Status Report, indicating that GSA had produced this document to CREW and the parties "agree that this document is no longer at issue in this case."  Joint Status Report at 1, ECF No. 58; *see also* GSA Resp. to the Court's Mar. 24, 2021 Minute Order, ECF No. 59 (noting that GSA "reexamined its decision to withhold the document" and "released to Plaintiff the record in question").

After these developments, the remaining disputes in this case involve GSA's withholdings of five categories of documents under FOIA Exemption 5:

---

[5] Specifically, the briefing itinerary identifies the date of the meeting, the names of the participants, and that the topic of discussion was "the future of the FBI headquarters."  This information was all disclosed in the publicly released GSA OIG Report. *See* CREW's Mot. & Opp'n Ex. 1, at 8.

- **<u>Category 1</u>:** One page of a January 25, 2018 email between Brennan Hart of GSA and Joseph Lai of the White House concerning the FBI headquarters project withheld in part under the deliberative process privilege, *Vaughn* Index at 2[6];

- **<u>Category 2</u>:** Five pages of a "[d]raft version of GSA's responses to Questions for the Record from the U.S. Senate Committee on Environment and Public Works regarding the FBI Headquarters Project, sent between White House Counsel and GSA's Office of General Counsel" withheld in full under the deliberative process privilege, *Vaughn* Index at 5;

- **<u>Category 3</u>:** Nineteen pages of a "[d]raft version of the GSA Office of Inspector General Report" withheld in full under the deliberative process privilege, *Vaughn* Index at 6;

- **<u>Category 4</u>:** Three pages of a "[d]raft letter from GSA's General Counsel to Counsel to the GSA Office of Inspector General concerning a records request for the FBI Headquarters Project" withheld in full under the deliberative process privilege and attorney-client privilege, *Vaughn* Index at 7;

- **<u>Category 6</u>:** Ninety-one pages of "[e]mail communications between GSA officials and OMB officials" concerning "drafts and plans regarding communications and strategies, Congressional testimony and related correspondence, and predecisional planning for the FBI [Headquarters Project]" withheld in full under the deliberative process privilege, *Vaughn* Index at 9.

## II.   LEGAL STANDARD

Congress enacted the Freedom of Information Act, 5 U.S.C. § 552, to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted).  Congress remained sensitive to the need to achieve balance between these objectives and the potential that "legitimate governmental and private interests could be harmed by release of certain types of information." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc) (citation omitted), *cert. denied*, 507 U.S. 984 (1993).  To that end, FOIA "requires federal agencies

---

[6] Although the *Vaughn* Index suggests that this category contains multiple email communications, *Vaughn* Index at 2, the parties agree that only the redactions to this January 25, 2018 email are in dispute.  *See* CREW's Mot. & Opp'n at 9.

to make Government records available to the public, subject to nine exemptions for categories of material." *Milner v. Dep't of Navy*, 131 S. Ct. 1259, 1261-62 (2011). Ultimately, "disclosure, not secrecy, is the dominant objective of the act." *Rose*, 425 U.S. at 361. For this reason, the "exemptions are explicitly made exclusive, and must be narrowly construed." *Milner*, 131 S. Ct. at 1262 (citations omitted).

When presented with a motion for summary judgment in this context, the district court must conduct a "de novo" review of the record, which requires the court to "ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure under the FOIA." *Multi Ag. Media LLC v. Dep't of Agriculture*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (citation omitted). The burden is on the agency to justify its response to the plaintiff's request. 5 U.S.C. § 552(a)(4)(B). "An agency may sustain its burden by means of affidavits, but only if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Multi Ag Media*, 515 F.3d at 1227 (citation omitted). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. Civil Liberties Union v. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011) (citations omitted). "Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011) (citation omitted). Summary judgment is proper when the pleadings, the discovery materials on file, and any affidavits or declarations "show[] that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). With these principles in mind, the Court turns to the merits of the parties' cross-motions for summary judgment.

## III.    DISCUSSION

The sole issue remaining before the Court is whether GSA's five categories of withholdings fall within FOIA's Exemption 5.[7] The Court has reviewed the GSA's supporting declaration, *Vaughn* Index and supplemental *Vaughn* Index, and certain documents *in camera*. Considering the arguments of the parties, as well as its own review of certain records, the Court concludes that GSA has discharged its FOIA obligations as to Categories 2, 3, and 4, and so the Court shall enter summary judgment in GSA's favor as to those categories. However, GSA has failed to justify its withholding of Category 1 under FOIA Exemption 5, and so shall enter summary judgment in CREW's favor as to that category. The Court further concludes that GSA has failed to show that it has released all reasonably segregable non-exempt information in Category 6, and so shall require GSA to re-examine its withholdings in that category.

Before discussing each of the disputed categories of records, the Court shall set out the appropriate legal framework underlying FOIA Exemption 5.

## A.  FOIA Exemption 5 Legal Framework

FOIA Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5

---

[7] GSA also argues that it properly withheld certain records pursuant to Exemptions 6 and 7(C). *See* GSA's Mot. at 19–21. CREW does not challenge GSA's withholdings under either of these exemptions. CREW's Mot. & Opp'n at 1 n.1. In addition, as noted *supra* Section I, after the Court ordered GSA to submit certain documents for *in camera* review, the parties filed a Joint Status Report indicating that GSA had released the one page of material redacted pursuant to Exemption 7(E), so that exemption is no longer at issue in this case. *See* Joint Status Report, ECF No. 55.

U.S.C. § 552(b)(5).  To fall within Exemption 5, "a document must meet two conditions: 'its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it.'"  *Stolt-Nielsen Transp. Grp. v. United States*, 534 F.3d 728, 733 (D.C. Cir. 2008) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).  Exemption 5 "incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant—including the presidential communications privilege, the attorney-client privilege, the work product privilege, and the deliberative process privilege—and excludes these privileged documents from FOIA's reach."  *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (internal citations and quotation marks omitted).

GSA bears the burden of demonstrating the applicability of any asserted privilege.  *In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n WD Energy Servs., Inc.*, 439 F.3d 740, 750 (D.C. Cir. 2006).  To meet that burden, GSA must establish the claimed privilege with "reasonable certainty."  *Fed. Trade Comm'n v. TRW, Inc.*, 628 F.2d 207, 213 (D.C. Cir. 1980), by adducing competent evidence in support of "each of the essential elements necessary to sustain a claim of privilege," *Alexander v. Fed. Bureau of Investigation*, 192 F.R.D. 42, 45 (D.D.C. 2000). This standard requires GSA to "offer more than just conclusory statements, generalized assertions, and unsworn averments of its counsel."  *In re Application of Veiga*, 746 F. Supp. 2d 27, 34 (D.D.C. 2010).  Where the proponent of a privilege fails to adduce sufficient facts to permit the district court to conclude with reasonable certainty that the privilege applies, its burden has not been met.  *TRW*, 628 F.2d at 213.

Here, GSA relies on the deliberative process privilege for the remaining categories of withheld records, and also invokes the attorney-client privilege with respect to Category 4.

11

### 1. Deliberative Process Privilege

The deliberative process privilege protects "documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which government decisions and policies are formulated." *Loving*, 550 F.3d at 38 (quoting *Klamath*, 532 U.S. at 8). It protects not only communications that are deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency. *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982). This privilege is intended to protect the decision-making "'processes of the executive branch in order to safeguard the quality and integrity of governmental decisions.'" *A. Michael's Piano, Inc. v. Fed. Trade Comm'n*, 18 F.3d 138, 147 (2d Cir. 1994) (quoting *Hopkins v. Dep't of Hous. & Urban Dev.*, 929 F.2d 81, 84 (2d Cir. 1991)). Discussions among agency personnel about the relative merits of various positions which may be adopted are just as a much a part of the deliberative process as the actual recommendations and advice which are agreed upon. *See Mead Data Central, Inc. v. Dep't of Air Force*, 566 F.2d 242, 257 (D.C. Cir. 1977). Congress created this exception in the FOIA because it believed that forcing agencies to "operate in a fishbowl" would undermine the quality of administrative decision-making by preventing the full and frank exchange of ideas on legal and policy matters. *Id.* at 256 (citing S. Rep. No. 813, 89th Cong., 1st Sess. 9, and H.R. Rep. No. 1497, 89th Cong., 2d Sess. 10 (1966)). Consistent with congressional intent on the subject, this Circuit has construed Exemption 5 "as narrowly as consistent with efficient Government operation." *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc) (citing *Mead Data*, 566 F.2d at 256).

"To fall within the deliberative process privilege, materials must bear on the formulation or exercise of agency policy-oriented *judgment*." *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). A record qualifies for withholding only if it is both

"predecisional" and "deliberative." *Wolfe*, 839 F.2d at 774. "Documents are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 2021 WL 816352, at *4 (Mar. 4, 2021); *see also Petroleum Info.*, 976 F.2d at 1434 ("A document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975))). At its most basic, a document is "deliberative" in nature if "it reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

Because the goal of Exemption 5 is to "prevent injury to the quality of agency decisions," the deliberative process privilege can apply only to deliberative processes the results of which are or will be agency policy. *See Petroleum Info. Corp.*, 976 F.2d at 1434. The key question in determining whether the material is deliberative "is whether disclosure of the information would 'discourage candid discussion within the agency.'" *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991) (quoting *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1567–68 (D.C. Cir. 1987)). To meet its burden, an "agency must establish 'what deliberative process is involved, and the role played by the documents in issue in the course of that process.'" *Senate of the Commonwealth of P.R. v. Dep't of Justice*, 823 F.2d 574, 585–86 (D.C. Cir. 1987) (quoting *Coastal States*, 617 F.2d at 868).

### 2. Attorney-Client Privilege

"The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services," as well as "communications

from attorneys to their clients if the communications rest on confidential information obtained from the client." *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997) (internal quotation marks omitted).  To demonstrate the applicability of the privilege, the proponent must establish each of the following essential elements: (1) the holder of the privilege is, or sought to be, a client; (2) the person to whom the communication is made is a member of the bar and, in connection with the communication at issue, is acting in his or her capacity as a lawyer; (3) the communication relates to a fact of which the attorney was informed by his client, outside the presence of strangers, for the purpose of securing legal advice; and (4) the privilege has been claimed and not waived by the client.  *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984) (internal citation omitted).  A "fundamental prerequisite to the assertion of the privilege" is "confidentiality both at the time of the communication and maintained since."  *Coastal States*, 617 F.2d at 863.

"In the governmental context, the 'client' may be the agency and the attorney may be the agency lawyer."  *Tax Analysts*, 117 F.3d at 618; *see also Coastal States*, 617 F.2d at 863 (explaining that attorney-client privilege applies when "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests, and needs the same assurance of confidentiality so it will not be deterred from full and frank communications with its counselors").  Not every communication between an attorney and a client—government or otherwise—is made for the purpose of securing legal advice or services.  As this Circuit has explained, a government attorney's "advice on political, strategic, or policy issues, valuable as it may [be], would not be shielded from disclosure by the attorney-client privilege."  *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998) (per curiam) (internal quotation marks omitted)

### 3. FOIA Improvement Act

Pursuant to the FOIA Improvement Act of 2016, "[a]n agency shall withhold information" under the discretionary FOIA exemptions, including Exemption 5, "only if the agency reasonably foresees that disclosure would harm an interest protected by" a discretionary exemption or if "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). "Stated differently, pursuant to the FOIA Improvement Act, an agency must release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably harm an exemption-protected interest and if its disclosure is not prohibited by law." *Rosenberg v. Dep't of Def.*, 342 F. Supp. 3d 62, 73 (D.D.C. 2018).

The FOIA Improvement Act imposes a "meaningful and independent burden on agencies to detail the specific reasonably foreseeable harms that would result from disclosure of certain documents or categories of documents." *See Ctr. for Pub. Integrity v. Dep't of Def.*, 486 F. Supp. 3d 317, 335–36 (D.D.C. 2020) (citing *Rosenberg*, 342 F. Supp. 3d at 78; *Judicial Watch, Inc. v. Dep't of Justice*, No 17-0832, 2019 WL 4644029, at *3–4 (D.D.C. Sept. 24, 2019)). Although an agency may "take a categorical approach—that is, group together like records," *Rosenberg*, 342 F. Supp. 3d at 78, it still must "articulate both the nature of the harm and the link between the specified harm and specific information contained in the material withheld.'" *Judicial Watch, Inc. v. Dep't of Commerce*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019) (quoting H.R. Rep. No. 114-391, at 9 (2016)).

### B. The Court Shall Grant Summary Judgment to CREW as to Category 1.

GSA's Category 1 includes redacted portions of a January 25, 2018 email from Brennan Hart of GSA to Joseph Lai, who served as a Special Assistant to the President. GSA claims that the redacted portions are protected by the deliberative process privilege because they consist of

communications "through which policy was being formulated" and which were made "as part of a consultative process," including "recommendations so that decisions about the future of the project could be made." [8]   *See* GSA's Mot. at 12 (citing *Vaughn* Index at 2); *see also* GSA's Reply & Opp'n at 5.

An unredacted version of this same email was publicly released by the House Oversight Committee.   *See supra* Section I; CREW's Mot. & Opp'n Ex. 3 at 2281 (unredacted version released by House Oversight Committee); CREW's Mot. & Opp'n Ex. 4 (redacted version produced by GSA to CREW).   Review of the unredacted version of this email does not align with GSA's description in its *Vaughn* Index.   The communication does not appear to include any "recommendations" or "consultations," much less any "deliberation" about the course of the project.   The redacted version merely removes the fact that OMB had to approve a report about the FBI project before it could be sent to the appropriate Senate Committee, that the President had been briefed on and approved the plans for the project, and that there was "political interest" in the project.   *See* CREW Mot. & Opp'n Ex. 3.   It also notes that the president "signed off" on the project, which suggests that the communication was not "predecisional" as to any agency policy or decision about the project.   *See* CREW Mot. & Opp'n at 20.   Accordingly, GSA has failed to carry its burden to demonstrate that the redacted portions of the Category 1 email reflect advisory opinions, recommendations, or deliberations comprising part of any policymaking process.

---

[8] GSA's opening brief and *Vaughn* index suggested that GSA was also claiming that the presidential communications privilege applied to this document.   *See Vaughn* Index at 2; GSA's Mot. at 18.   In its reply, GSA clarifies that "it does not assert the presidential communications privilege over this specific email, which GSA instead, withheld, in part, under the deliberative process privilege."   GSA's Reply at 6.   Accordingly, the Court shall not address  the parties' arguments regarding the applicability of the presidential communications privilege with respect to Category 1, as GSA concedes it does not apply to this particular withholding.   *Id.*

The Court shall **GRANT** CREW's cross-motion for summary judgment as to Category 1 and shall **ORDER** GSA to produce to CREW a version of this document without the redactions under Exemption 5.

## C.  The Court Shall Grant Summary Judgment to GSA as to Categories 2, 3, and 4.

GSA also invokes the deliberative process privilege to withhold draft materials in Categories 2, 3, and 4.  The Court has reviewed *in camera* all three categories of records and required GSA to supplement its *Vaughn* Index as to Categories 2 and 3.  *See* Mem. Op. at 4–5, ECF No. 53.  For the reasons set forth below, the Court finds that GSA properly withheld these records from production under FOIA Exemption 5, and so shall grant summary judgment to GSA with respect to these three categories.

### 1.  Category 2

GSA's Category 2 includes a "[d]raft copy of GSA's responses to Questions for the Record from the U.S. Senate Committee on Environment and Public Works regarding the FBI Headquarters Project, sent between White House Counsel and GSA's Office of General Counsel." Suppl. *Vaughn* Index at 1.  The Court reviewed this record *in camera* and required Defendant to supplement its *Vaughn* Index to provide additional information about the specific deliberative process involved, the function and significance of the documents in that process, and the nature of the decision-making authority vested in the document's author and recipient.  *See* Mem. Op. at 4, 9, ECF No. 53.

In its supplemental *Vaughn* Index, GSA indicates that the withheld record includes deliberations between the Office of White House Counsel and GSA's Office of General Counsel regarding "how GSA would move forward with responding to questions for the record" from the U.S. Senate Committee on Environment and Public Works regarding the FBI headquarters project.

Suppl.  Suppl. *Vaughn* Index at 1.  According to GSA, the draft includes "proposed edits and other revisions" to ensure that the responses to the Senate Committee's inquiry accurately reflected the position of GSA and the White House.  *Id.*  Based on its own review, the Court agrees with GSA's characterization of this draft and concludes that GSA has adequately addressed the deficiencies in its *Vaughn* Index noted by the Court.  *See* Mem. Op. at 9, ECF No. 53.

The Court also finds that GSA has demonstrated that it properly withheld this document under Exemption 5.  Other courts in this jurisdiction have concluded that agency deliberations about "how to respond to questions from Congress about matters of agency policy qualify as deliberative and predecisional." *Judicial Watch, Inc. v. Dep't of State*, 306 F. Supp. 3d 97, 115–16 (D.D.C. 2018); *see also Competitive Enter. Inst. v. EPA*, 12 F. Supp. 3d 100, 119–20 (D.D.C. 2014) (finding exempt from disclosure records involving "how to communicate with members of Congress" and how to "prepare for potential points of debate or discussion"); *Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 208 (D.D.C. 2010) (deeming exempt under the deliberative process privilege records that "discuss[ed] how to respond to inquiries from the press and Congress"); *Judicial Watch, Inc. v. Dep't of Justice*, 306 F. Supp. 2d 58, 71–72 (D.D.C. 2004) (protecting communications prepared to assist an agency head for congressional testimony).  The Category 2 document fits squarely within that description.

The Court also finds that GSA has sufficiently articulated a "foreseeable harm" that would arise from disclosure of this draft, namely that disclosure of this draft may "confuse the public" about the agency's responses to the questions presented and would have a "chilling effect" on the ability of GSA to engage in inter-agency and intra-agency discussions.  Suppl. *Vaughn* Index at 1; Lewis Decl. ¶ 19(b); *see Machado Amadis v. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (finding adequate agency's explanation that disclosure of the "information at issue" would chill

future discussions).  The Court concludes  that GSA has adequately justified its withholding of Category 2.

### 2.  Category 3

Next, GSA withheld as Category 3 a draft version of the GSA OIG Report, the final version of which was publicly released.  *See supra* Section I; Suppl. *Vaughn* Index at 2.  GSA indicates in its Supplemental *Vaughn* Index that this draft was provided by GSA's Office of Inspector General to GSA to allow GSA to "review/respond to the OIG's questions therein" as part of a "deliberative process of determining what, if any, GSA action with respect to the FBI headquarters requires further inquiry/investigation."  Suppl. *Vaughn* Index at 2.  The Court reviewed this record *in camera* and required Defendant to supplement its *Vaughn* Index to provide additional information about the nature of the specific deliberative process involved, the function and significance of the documents in that process, and the nature of the decisionmaking authority vested in the document's author and recipient.  *See* Mem. Op. at 4, 9, ECF No. 53.

Although draft documents are not *per se* exempt from disclosure, *see Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257 (D.C. Cir. 1982), they often fall within the protection of the deliberative process privilege because "[a] draft is, by definition, a preliminary version of a piece of writing subject to feedback and change," *U.S. Fish & Wildlife Serv.*, 2021 WL 816352, at *5; *id.* at *7 ("It is true that a draft document will typically be predecisional because . . . calling something a draft communicates that it is not yet final."); *People for the Am. Way. Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 303 (D.D.C. 2007) (noting that drafts are "commonly found exempt under the deliberative process exemption" because they precede the final decision).

CREW argues that GSA has failed to demonstrate that it properly withheld this draft report because the final version was ultimately released to Congress and the public, so there is a

"particularly high likelihood" that some portions of the draft were "relied upon or adopted as official positions after their preparations."  *See* CREW's Reply at 10; CREW's Mot. & Opp'n at 21 (internal citations and quotations omitted).   Although CREW is correct that a draft may "lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealing with the public," the draft at issue here indicates that it is a preliminary analysis by GSA OIG that was created for the purpose of eliciting GSA's comments and responses. *Judge Rotenberg Educ. Ctr., Inc. v. FDA*, 376 F. Supp. 3d 47, 69 (D.D.C. 2019).   Other courts in this jurisdiction have concluded that similar draft reports containing or eliciting comments are both deliberative and pre-decisional.  *See, e.g.*, *Reporters Comm. for Freedom of the Press v. FBI*, --- F. Supp. 3d ---, 2020 WL 1324397, at *7 (D.D.C. Mar. 20, 2020) (finding draft Inspector General report exempt based on agency's reasoning that they would "reveal the thought and decision-making processes of the OIG and may not reflect the agency's final decisions"); *Techserve Alliance v. Napolitano*, 803 F. Supp. 2d 16, 28 (D.D.C. 2011) (finding that agency properly withheld draft report by OIG that "contains pre-decisional commentary").

The Court finds that GSA properly withheld this document under the deliberative process privilege, as it contains a "preliminary analysis" by GSA's Office of Inspector General of GSA's actions regarding the FBI Headquarters Project.  Suppl. *Vaughn* Index at 2.  Moreover, GSA argues that disclosure of this draft "could lead to confusion regarding GSA"s position on the investigation and and "undermine the deliberative nature of OIG's work."  Suppl. *Vaughn* Index at 2.  The Court finds that GSA has satisfied its burden to demonstrate that this draft falls within the scope of the deliberative process privilege, and that GSA's articulation of foreseeable harm is adequate.

### 3.  Category 4

In Category 4, GSA withheld in full a "draft copy of correspondence from GSA's General Counsel to the counsel for the GSA Inspector General." *Vaughn* Index at 7. The draft correspondence was attached to an email sent by GSA's General Counsel with the message "[f]or discussion at our meeting tomorrow"  to two *non-GSA* officials: one official in the Office of White House Counsel, and another in the Office of Legal Counsel ("OLC") of the DOJ.  CREW's Mot. & Opp'n at 22 (citing CREW's Mot. & Opp'n Ex. 5).  GSA invokes both the attorney-client privilege and the deliberative process privilege to justify its withholding of this document.

GSA first argues that the attorney-client privilege protects this document from disclosure because it contains communications "made for the purpose of providing legal advice" from the "attorney," GSA's Office of General Counsel, to the "client," GSA.  GSA's Mot. at 10.  Based on its own review of this document, the Court disagrees with GSA's description; the draft does not contain any "advice" from the Office of General Counsel to the GSA, nor does it appear to have been created for the purpose of providing legal advice to GSA.  Rather, it is a draft letter written by the "attorney" (GSA's Office of General Counsel) stating the "client's" (GSA's) legal position with respect to the investigation conducted by the GSA OIG about the FBI headquarters project.

In its Reply, GSA suggests that the transmission of the email attaching the draft correspondence to OLC demonstrates that it was exchanged for the purpose of obtaining legal advice, noting that OLC is tasked with providing "advice in response to requests from . . . the various agencies of the Executive Branch[.]" GSA's Opp'n & Reply at 2.  Absent a "clear request" for legal advice, however, the fact that the document was transmitted to OLC does not support GSA's claim of any attorney-client relationship between GSA and OLC. *Cause of Action Inst. v. Dep't of Justice*, 330 F. Supp. 3d 336, 350 (D.D.C. 2018).  A party seeking the protection of an

attorney-client privilege must show that securing legal advice was a "primary objective" because this privilege does not extend to a government attorney's advice on political, strategic, or policy issues, valuable as it may be.'" *Id.* at 347. The email message to which the document is attached does not plainly indicate that it was sent for the purpose of obtaining "legal" advice. Accordingly, the Court concludes that the attorney-client privilege does not apply to this withheld document.

The Court, however, is persuaded by GSA's argument that this document was properly withheld pursuant to the deliberative process privilege. GSA indicates that this draft was circulated by GSA's Office of General Counsel to OLC and White House officials "for the purpose of ensuring the letter accurately presented GSA's legal position on actions of the GSA Office of Inspector General, including whether such a letter should even be sent, and, if so, what the specific content should contain." GSA's Opp'n & Reply at; *Vaughn* Index at 7. This description better aligns with the content of the document, and the Court's *in camera* review confirms that the purpose of the document was to determine GSA's legal position with respect to the investigation conducted by GSA's Office of Inspector General.

In addition, GSA identifies the foreseeable harm that would flow from disclosing this document, indicating that its release would "jeopardize the integrity of the deliberative process" and potentially cause "individuals not to engage with the Office of General Counsel." *Id.* at 7. The Court finds that GSA has established that Category 4 falls within Exemption 5.

### 4. Segregability of Categories 2, 3, and 4

Although the Court concludes that GSA properly withheld the Category 2, 3, and 4 records, it must also "make specific findings of segregability regarding the documents to be withheld." *Stolt-Nielsen Transp. Grp.*, 534 F.3d at 734 (internal quotation marks omitted) (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007)); *see also Morley v. CIA*, 508 F.3d

1108, 1123 (D.C. Cir. 2007) (explaining that a district court has "an affirmative duty to consider the segregability issue *sua sponte*" (internal quotation marks omitted) (quoting *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F. 3d 1022, 1028 (D.C. Cir. 1999)).

"Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman*, 494 F.3d at 1117.  Affidavits attesting to the agency's "line-by-line review of each document withheld in full" and the agency's determination "that no documents contained releasable information which could be reasonably segregated from the nonreleasable portions," in conjunction with a *Vaughn* index describing the withheld record, suffice. *Id.* (internal quotation marks omitted); *see also Loving*, 550 F.3d at 41 (stating that "the description of the document set forth in the Vaughn index and the agency's declaration that it released all segregable material" are "sufficient for [the segregability] determination").

Granting GSA its due presumption of regularity, the Court finds that GSA has discharged its burden concerning segregability with respect to these three categories of records.  GSA's *Vaughn* Index and Supplemental *Vaughn* Index provide a statement of its reasons for withholding each of these categories of records.  And its sworn declaration establishes that the records were "reviewed line-by-line" to identify information "exempt from disclosure." Lewis Decl. ¶ 20.  The Court has also conducted its own independent review of these documents and is satisfied that any non-exempt information contained therein is not reasonably segregable.

Because the Court finds that GSA properly withheld the records in Categories 2, 3, and 4, the Court shall **GRANT** GSA's motion for summary judgment as to these categories.

**D.  The Court Shall Hold in Abeyance the Parties' Cross-Motions for Summary Judgment Regarding Category 6.**

Lastly, the Court shall hold in abeyance the parties' cross-motions for summary judgment with respect to GSA's Category 6.  The Court ordered GSA to submit these records for *in camera*

review and to supplement its *Vaughn* Index, noting that GSA had failed to provide for *each* document at issue the nature of the deliberative process, the function of the document in that process, and the nature of the decisionmaking authority vested in the document's author and recipient.  Mem. Op. at 7, ECF No. 53.  GSA's supplemental index addresses many of the deficiencies identified by the Court.  However, during its *in camera* review, the Court identified certain portions of documents that do not contain any pre-decisional or deliberative communications, and are readily segregable from otherwise exempt information.  Accordingly, the Court shall hold in abeyance the parties' cross-motions with respect to Category 6 to allow GSA to re-examine its withholdings in this category and produce to CREW any reasonably segregable, non-exempt information.

In contrast with its original *Vaughn* Index, GSA's Supplemental *Vaughn* Index provides an entry for each email and its attachment(s), and describes the deliberative process at issue in each email exchange.  *See* Suppl. *Vaughn* Index at 3–54.  The Supplemental *Vaughn* Index indicates—and the Court's *in camera* review confirms—that there are a number of duplicate versions of the same email thread.  These records include proposed Congressional testimony, responses to Congressional questions for the record, and draft press statements and talking points. GSA's Mot. at 13. These categories of communications may constitute deliberative and pre-decisional materials exempt under FOIA's Exemption 5 because they involve an agency's deliberation about how to respond to inquiries about the agency's policy.  *See supra* Section III(C)(1) (discussing draft responses to Congressional questions for the record and Congressional testimony); *see, e.g.*, *Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 208 (D.D.C. 2010) (concluding that "documents generated as part of a continuous process of agency decision making, viz., how to respond to on-going inquiries" from Congress and the media are

"pre-decisional" and "deliberative in nature"); *Citizens for Responsibility & Ethics in Wash. v. Dep't of Labor*, 478 F. Supp. 2d 77, 83 (D.D.C. 2007) (finding discussions regarding how to respond to a media report commenting on agency's policies was pre-decisional and deliberative).

Here, GSA has withheld in full 91 pages of emails and their attachments.  The Court's review confirms that many of the email communications and their attachments include intra-agency or inter-agency deliberation about agency action with respect to the FBI headquarters project. However, the Court has also identified several examples of communications that do not appear to involve deliberation about any agency policy—for example, emails which simply reference a draft document attached, but do not otherwise contain deliberation about agency policy within the body of the email messages (*e.g.*, pages 1, 5, 10, 14, and 59), one email indicating that feedback will be provided (page 2–3 with duplicates at pages 6–7, 39–40, 45, 54), one email thanking an agency employee (page 2, with duplicates at pages 7, 39, 45, and 54), and one email inquiring about the timing of a notification to stakeholder (page 16, with duplicates at 23, 30).[9]  GSA provides no justification for withholding such emails, which are plainly segregable from any attachment or other messages that may otherwise be covered by the deliberative process privilege.

Moreover, CREW argues that the header portions of the emails in Category 6—including the senders, recipients, transmission dates, subject lines, and attachment titles—are not exempt and should be released.  *See* CREW's Mot. at 26; *see Ctr. for Pub. Integrity v. U.S. Dep't of Commerce*, 401 F. Supp. 3d 108, 121 (D.D.C. 2019) (holding agencies failed to comply with segregability obligations and ordering them to "disclose the header information in the disputed documents—dates, names of senders and recipients, titles, and subject-matter descriptions—that

---

[9] The page numbers listed here correspond to the page numbers listed in GSA's Supplemental *Vaughn* Index, referring to the pages of the combined PDF file containing all of the communications included in Category 6.

is segregable and non-exempt"); *Judicial Watch, Inc. v. U.S. Dep't of Treasury*, 796 F. Supp. 2d 13, 29 (D.D.C. 2011) (same).  The Court agrees that GSA has failed to justify its withholding of this information; GSA provides no argument that this information is exempt from disclosure, nor does it claim that the material is "inextricably intertwined" with any exempt portions of the messages or attachments themselves.  *See* Lewis Decl. ¶¶ 20–21; GSA Opp'n & Reply at 19–20. The Court agrees with CREW that this information is reasonably segregable from otherwise exempt information.

Accordingly, the Court shall hold in abeyance the parties' cross-motions with respect to Category 6 and shall order GSA to re-examine its withholdings and disclose information that is reasonably segregable and non-exempt.  By **no later than April 12, 2021**, GSA shall notify the Court either (a) that it has released to CREW segregable, non-exempt information, including the specific messages and header information identified by the Court above (excluding, if appropriate, any personal identifying and/or contact information—*e.g.*, email addresses or phone numbers); *or* (b) that it has not released to CREW the specified information and GSA's legal grounds for claiming that this information is not subject to disclosure.  If GSA concludes that it shall withhold in full the communications contained in Category 6, then **by no later than April 12, 2021**, it shall also file an amended *Vaughn* Index and declaration that reevaluates the segregability issue for all documents withheld in this category.  *See Am. Immigration Lawyers Ass'n v. U.S. Dep't of Homeland Sec.*, 852 F. Supp. 2d 66, 82 (D.D.C. 2012)) ("Because a district court should not undertake *in camera* review of withheld documents as a substitute for requiring an agency's explanation of its claims exemptions in accordance with Vaughn, the Court finds that the best approach is to direct defendants to submit revised *Vaughn* submissions." (citations omitted)).  Consistent with the directives by other courts in this jurisdiction, the Court prescribes the following

format for GSA's (second) revised *Vaughn* submission for Category 6, if one is necessary:

> [A]ny supplemental *Vaughn* index [must] include a separate numbered entry for each document, including for each email (or email chain) and for each email attachment (which shall be separately listed in consecutive order after its associated email): (1) a document number; (2) an index identification number (*i.e.*, a Bates stamp number); (3) the document's subject or title; (4) its date; (5) the author and the author's job title; (6) the recipient and the recipient's job title; (7) the total number of pages; (8) the disposition (whether it is entirely or partially withheld); (9) the reason for being withheld; (10) the statutory authority for the withholding; and (11) the number of pages with redacted, withheld information.

*Ctr. for Public Integrity*, 401 F. Supp. 3d at 121 (quoting *Ctr. for Biological Diversity v. EPA*, 279

F. Supp. 3d 121, 145 (D.D.C. 2017)).

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART, DENIES IN PART, and HOLDS

ABEYEANCE IN PART GSA's Motion for Summary judgment, and GRANTS IN PART,

DENIES IN PART, and HOLDS ABEYEANCE IN PART CREW's Cross-Motion for Summary

Judgment.  An appropriate order accompanies this Memorandum Opinion.

**Date:** March 29, 2021                    ____/S/_____

                                                              COLLEEN KOLLAR-KOTELLY
                                                              United States District Judge